JOHN SANTARELLI,                               CIVIL NO. 13-213 (JNE/JSM)

    Petitioner,

v.                                         <u>REPORT AND RECOMMENDATION</u>

SCOTT P. FISHER, Warden,

    Respondent.

    JANIE S. MAYERON, U.S. Magistrate Judge

This matter is before the undersigned Magistrate Judge of the District Court on the petition of federal prisoner John Santarelli for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1]. Petitioner claims that he has been deprived of a constitutionally protected liberty interest without due process of law, as the result of a disciplinary action taken against him during his confinement. Petitioner seeks restoration of the good conduct time that was forfeited pursuant to the disciplinary action. Respondent has filed a response contending that the Petition should be denied, and Petitioner filed a reply to the Response. [Docket Nos. 4, 8].

The matter has been referred to this Court for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, the Court concludes that Petitioner's habeas corpus petition should be **DENIED**, and that this action should be **DISMISSED WITH PREJUDICE**.

**I.  BACKGROUND**

Petitioner is currently incarcerated at the Federal Community Correctional Facility in Chicago Ridge, Illinois.[1]  See Docket No. 9.  He is serving a 60-month sentence, followed by five years of supervised release for Possession With Intent to Distribute at Least 500 Grams of Cocaine and Aiding and Abetting, in violation of 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(B)(ii)(II), and 18 U.S.C. § 2.  See Declaration of Angela Buege [Docket No. 5] ("Buege Decl."), ¶ 3, Attach. A.  At the time of the response to the Petition, Petitioner has a projected release date of November 5, 2013, via good conduct time release.[2]  Buege Decl., ¶ 3.

The facts underlying Petitioner's suit are as follows: On September 28, 2011 at approximately 8:30 p.m., Petitioner was placed in the Special Housing Unit ("SHU") at the Federal Prison Camp, Pekin, Illinois ("FPC-Pekin") pending a Special Investigative Supervisor ("SIS") investigation into a food strike by inmates during the September 28 evening meal.  See Declaration of Jeffery Buser [Docket No. 6] ("Buser Decl."), ¶ 3, Attach. A.

---

[1]  Petitioner was housed at FCI-Sandstone, Minnesota when he initiated the present case.  See Buege Decl., ¶ 3.

[2]  In the event that Petitioner is released on November 5, 2013, his Petition may be moot.  Copley v. Keohane, 150 F.3d 827, 829 (8th Cir. 1998) (when a prisoner is no longer in the custody, there is no entity the Court can order to effect release, therefore petitioner's § 2241 petition is moot); Perkins v. United States, Civ. No. 09-2931 (PAM/FLN), 2010 WL 2838553 at *3 (D. Minn. June 30, 2010) ("It is long-established law that a habeas petitioner must be 'in custody' to receive habeas relief.") (citing Jones v. Cunningham, 371 U.S. 236, 241 (1963)); Duale v. Baniecke, Civ. No. 05-2998 (JRT/AJB), 2006 WL 1314319 at *1 (D. Minn. May 12, 2006) (summarily dismissing § 2241 petition as moot because petitioner was no longer in custody).

On November 9, 2011, the SIS investigation regarding the food strike was completed, and on November 10, 2011, an incident report (Number 2232145) was written charging Petitioner with Engaging in a Group Demonstration, a Code 212 violation of Bureau of Prison ("BOP") policy. Id., ¶ 4, Attach. B (November 10, 2011 Incident Report). The incident report provided that information gathered during inmate mass interviews indicated that a food strike had been conducted due to the imposition of privilege restrictions placed on a unit within the prison called "the Nebraska Unit," where Petitioner resided, and that staff memoranda and video evidence revealed that the majority of the inmates in the Nebraska Unit (187 out of 195 inmates), including Petitioner, did not go to the inmate dining room on the evening of September 28, 2011, through the noon meal on October 2, 2011. Id., ¶ 4, Attach. B. The incident report was delivered to Petitioner on November 10, 2011, at approximately 3:30 p.m. Id.

On December 11, 2011, the November 10, 2011 incident report was re-written as a result of inaccurate information contained in the initial report stating that Petitioner had not participated in meals from the evening of September 28, 2011, to the noon meal on October 2, 2011. See Buser Decl., ¶¶ 5, 6 Attach. C (Re-Written Incident Report). The revised report stated that Petitioner had only refrained from attending the evening meal on September 28, 2011, as he was housed in the SHU during the remainder of the food strike. Id. The amended incident report reiterated that based on information gathered during inmate mass interviews, the investigation showed that a food strike was conducted due to privilege restrictions that had been imposed on the Nebraska Unit as a result of high levels of contraband recovered from the Unit, and that the majority of the inmates in the Unit (187 out of 195 inmates) did not go to the inmate dining room on the

3

evening of September 28, 2011, through the noon meal on October 2, 2011. Id. The re-written incident report also provided, "[t]hrough information gathered during mass interviews you were specifically identified as a key instigator in the food strike." Id. The re-written incident report included comments by Petitioner, in which he stated "I had nothing to do with the food strike, I didn't eat dinner on 9-28-11 because I didn't like what they were serving. I have been in SHU since 9-28-11, I have not eaten the meals since I was in SHU. I feel I'm a scapegoat because I've been in SHU since 9-28-11." Id.

The Unit Disciplinary Committee recommended loss of Good Time Credit and referred the charge to a Discipline Hearing Officer ("DHO") for a further hearing in accordance with 28 C.F.R. § 541.7. Id., ¶¶ 8, 9, Attach. C. The Re-Written Incident Report was delivered to Petitioner on December 12, 2011 at 7:05 p.m. Id., Attach. C. Under 28 C.F.R. § 541.7, the "UDC[3] will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays." 28 C.F.R. § 541.7(c). On December 29, 2011, pursuant to Program Statement 5270.7, Petitioner was notified that a delay in the review of the incident report was necessary due to the staff availability and staff being on leave. See Buser Decl., ¶ 9, D (Advisement of UDC Delay).

On December 20, 2011, Petitioner appeared before the UDC and asserted that he had nothing to do with the food strike and that he was being used a scapegoat because he was in SHU for the majority of the food strike. Id., ¶ 10. The UDC referred the matter to the DHO and recommended that if Petitioner was found guilty of the

---

[3] UDC stands for "Unit Discipline Committee." Buser Decl., ¶ 7.

offense, the DHO should consider imposing loss of good-time credits, loss of commissary, and loss of access to the Trulincs messaging system. Id. Petitioner was also advised on this date of the following rights pertaining to the hearing before the DHO: the right to have a written copy of the of the charges against him presented at least 24 hours prior to appearing before a DHO; the right to have a full-time member of the staff represent him before the DHO if available; the right to call witnesses and submit documentary evidence; the right to provide a statement or the right remain silent; the right to be present during the hearing if feasible; the right to be advised of the DHO's decision (including the facts supporting the decision and the DHO's disposition); and the right to appeal the decision of the DHO within 20 days of the notice regarding the DHO's decision and disposition. Id., ¶ 11, Attach. E. Petitioner signed the form notifying him of his rights. Id. Petitioner indicated that he wished to have a staff member represent him at the hearing, and also stated that he did not wish to have any witnesses called on his behalf. Id.

On January 19, 2012, thirty days after Petitioner was provided advance notice of the charge, the DHO hearing was conducted by Officer Buser. Id., ¶ 12. At the beginning of the hearing, Buser advised Petitioner of his due process rights and he stated that he understood his rights. Id., ¶ 13. Petitioner confirmed that he received a copy the incident report, the Notice of the DHO Hearing, and Inmate Rights at Discipline Hearing. Id. Petitioner's staff representative was not immediately available at the time of the hearing and Petitioner chose to waive his right to a staff representative in order to proceed with the hearing. Id. Petitioner elected to make a statement in which he asserted that he did not participate in the food strike. Id. He stated that he did not

5

appear for dinner on September 28, 2011, because he did not like beef stew, and that he was subsequently placed into segregation pending an investigation relating to contraband. Id. Petitioner also stated that he had eaten breakfast and lunch on September 28, 2011. Id. Petitioner claimed he was a scapegoat. Id. Petitioner chose to not submit any documentary evidence. Id.

Sometime after the hearing before the DHO, Petitioner was transferred to FCI-Sandstone. On August 17, 2012, Petitioner received a copy of the DHO's decision. Petition Ex. B (Initial DHO Report provided to Petitioner), p. 2; Buege Decl., Ex. B (same). The decision provided a summary of Petitioner's statement: "we did not participate, I don't like beef stew. I was locked up under investigation for contraband. I ate breakfast and lunch but not dinner on the 28th. They locked me up. I'm a scape goat. I'm being used." Id., p. 1. The finding of the DHO was that the act had been committed as charged regarding the offense of engaging in a group demonstration. Id. The report, as part of Section V ("SPECIFIC EVIDNECE RELIED ON TO SUPPORT FINDINGS"), provided no specific evidence relied upon to support this finding. Id. The sanction imposed was the deduction of 27 days of good time credit, 30 days of disciplinary segregation (suspended) and 180 days loss of commissary privileges. Id. No reasons for the sanctions was provided for in Section VII ("REASON FOR SANCTION OR ACTION TAKEN") of the DHO's report. Id., p. 2. Petitioner was notified of his appeal rights. Id. The report was signed by Buser, but not dated. Id.

Appeals of disciplinary decisions are due 20 days after the decision. See 28 C.F.R. § 542.15(a). Petitioner appealed the DHO decision, which was received by the regional office on September 17, 2012. Buege Decl., ¶ 4. Petitioner claims he signed

6

his appeal on August 31, 2012, and mailed it on September 4, 2012. Affidavit of John Santarelli ("Pet. Aff.") [Docket No. 1-1], ¶¶ 3, 5. The regional office denied the appeal as untimely; Petitioner appealed that decision and it was deemed untimely too. Buege Decl., ¶ 4. Petitioner failed to provide documentation to excuse his timeliness, as requested by the central office. Id., Attach. B (Administrative Remedy Generalized Retrieval Printout), p. 3.

Buser represented that the signature on the DHO decision that Petitioner appealed was an electronic signature. Buser Decl., ¶ 12. According to Buser, the report provided to Petitioner on August 17, 2012, was an incomplete report and he was not sure how or why the incomplete DHO report was delivered to Petitioner before he made the necessary changes and inserted information in Sections V and VII of his report. Id.

On February 1, 2013, after instant suit began, Petitioner was provided another DHO report, dated June 8, 2012. Buege Decl., ¶ 5; Buser Decl., ¶¶ 12, 18, Attach. G (June 8, 2012 DHO Report provided to Petitioner on February 1, 2013; see also Petitioner's Reply to Respondent's Response to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 8] ("Pet.'s Reply"), Ex. C (same). Buser claimed that his June 8, 2012 report represented the complete and accurate report. Buser Decl., ¶ 12.

The completed report contained the same statement by Petitioner as contained in the initial report. Buser Decl., Attach. G, p. 1. The completed reported also provided that the finding of the DHO was that the act had been committed as charged regarding the offense of engaging in a group demonstration. Id.

7

In this report, the DHO also stated that he had considered the following evidence to support this finding in Section V: The September 28, 2011 report by staff member, Lieutenant S. Riedell that through mass interviews it was revealed that the food strike was conducted as a result of privilege restrictions imposed on the Nebraska housing unit and the staff documentation that 187 of the 195 inmates from this unit did not attend mealtime from September 28, 2011, through the noon meal on October 2, 2011. Id., p. 2. Lieutenant S. Riedell also provided that through information gathered during mass interviews, Petitioner was specifically identified as a key instigator in the food strike. Id. In addition, the DHO considered a memorandum provided by Senior Officer Specialist Livzey, who observed approximately 200 inmates not attend dinner when the call for dinner was made, and the memorandum of Lieutenant C. Mowery who reported that on September 28, 2011, there were very few inmates in line for meal time and that when he went outside he saw a group of approximately 75-100 inmates standing around with some of them yelling at other inmates to not go and "[d]on't eat that shit." Id. Lieutenant C. Mowery could not identify which of the inmates were yelling. Id. The DHO also considered the reports of Lieutenant S. Riedell, Satellite Operations Administrator M. Wynia, Cook Supervisor D. Scott, and Unit Manager T. Gellner, who provided information that only between 3-8 inmates from the Nebraska Unit (out of 195 inmates) attended breakfast, lunch and dinner from September 28-30 and that usually 85%-90% of the inmates from the Nebraska Unit went to prison Food Services for meals. Id., pp. 2-3.

Further, the DHO considered the following October 20, 2011 statement given by Petitioner to Lieutenant S. Riedell:

> After lunch the first day, I heard there was going to be a food strike. I told all the other guys I wear green like them and I was going to go with the flow. I'm glad there was a food strike. I was at Terre Haute when there was a food strike and only after three days of taking our privileges they gave them back. I've been trying to contact Washington over all the lies that are told to us. If you keep asking us to police our own there will be bloodshed. You will find someone stabbed in a garbage can. I'm not here for being a snitch.

Id., p. 3. The DHO also considered Petitioner's later statements that he would not involve himself a food strike since he was trying to get to MCC Chicago on a work release program, he was falsely accused by other inmates, he had nothing to do with the food strike, and the only reason he did not attend dinner on September 28, 2011 was because he did not like the beef stew being served during the meal. Id.

DHO made the following findings:

> Based on the greater weight of information and evidence provided by the reporting staff member reflecting the majority of inmates from Nebraska Unit participated in a food strike during the time frame of the evening meal on September 28, 2011, through the noon meal on October 2, 2011, by not attending the meals provided by Food Services in the inmate dining hall for the purpose of having privileges returned to the inmate population, coupled with the fact inmate Santarelli was identified during the investigation of the incident as an organizer and/or instigator of the food strike, the Discipline Hearing Officer finds Santarelli committed the prohibited act of Encouraging/Engaging in a Group Demonstration, Code 212. Although Santarelli denied he organized/instigated and participated in the food strike, the investigation of the incident identified Santarelli as a principal organizer/instigator of the food strike, Santarelli admitted he did not attend the first meal of the food strike, and Santarelli's comments to investigating SIS Lieutenant Riedell on October 20, 2011, concerning the incident were consistent with his organization/instigation and participation in the food strike. As a result, the Discipline Hearing Officer determined Santarelli's identification as a principal organizer/instigator and his admission of not attending the first meal of the food strike constituted his commission of the

9

>prohibited act of organizing/encouraging and participation in
>a group demonstration.

Id., pp. 3-4.

The sanction imposed on Petitioner included the deduction of 27 days of good time credit, 30 days of disciplinary segregation (suspended) and 180 days loss of commissary privileges. Id., p. 4. The reasons for the sanctions imposed by the DHO were as follows:

>Inmates in a correctional environment who engage in and/or encourage others to engage in a group demonstration usually do so to create a diversion or to disrupt the security of the institution which can cause other inmates to escalate a situation into a serious problem and an unsafe environment. This conduct seriously endangers the safety of inmates and staff, disrupts the orderly operation of the institution, and hampers staff's ability to maintain a safe and secure institution. The sanctions imposed by the Discipline Hearing Officer were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times. Although not directly related to the infraction, privileges were taken to deter the inmate from this behavior in the future.

Id.

Petitioner appealed the decision set forth in the completed DHO report, which was received by the regional office on February 15, 2013. Buege Decl., ¶ 5. The response to the appeal was due on March 17, 2013. Id.

## II. DISCUSSION

Relying on the first copy of the decision by the DHO, Petitioner contended that his due process rights were violated because the decision of the DHO was not based on sufficient evidence to support the findings of the DHO. Memorandum In Support of Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 by a Person in Federal

Custody [Docket No. 2], pp. 10-11. Specifically, Petitioner asserted that the DHO did not rely on any evidence in making his determination as evidenced by the fact that Section V ("SPECIFIC EVIDENCE RELIED ON TO SUPPORT FINDINGS") was blank and no reasons were given in Section VII ("REASON FOR SANCTION OR ACTION TAKEN") of the DHO's report for the sanction imposed. Id., p. 10.

In opposition, Respondent asserted that the Petition should be dismissed because Petitioner did not exhaust his administrative remedies before commencing the present action.[4] See Respondent's Response to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 4], pp. 10-13. In addition, Respondent argued that Petitioner's due process rights were met in this case, and that there was sufficient evidence to support the findings of the DHO that Petitioner committed a Code 212 violation by engaging in a group demonstration. Id., pp. 14-19. According to Respondent, the majority of Petitioner's arguments are based on the defects in the incomplete DHO Report, and that the complete and accurate DHO report negates these arguments. Id., p. 14 n.6.

In reply, Petitioner argued that the Court should not accept the completed report provided to him after the initiation of the present action. See Pet.'s Reply, pp. 8-9. In addition, he asserted that the BOP violated his rights to due process by not following its rules and regulations as there was no incident report until after the investigation; the

---

[4] While exhaustion in § 2241 cases is generally required (see McCarthy v. Madigan, 503 U.S. 140, 144 (1992)), "because the exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially created, not jurisdictional," this Court may turn to the merits of the Petition without regard to the exhaustion requirement. Lueth v. Beach, 498 F.3d 795, 797 n. 3 (8th Cir. 2007) (citations omitted). As this Court has concluded that the Petition fails on its merits, this Court does not reach a decision as to whether Petitioner failed to exhaust his administrative remedies, or whether requiring him to do so would have been futile.

11

investigating officer may not be the employee who wrote the incident report, however, here Lieutenant Riedell did both; anonymous information may not be used as evidence in making a finding, but here the DHO relied on the alleged results of the anonymous mass interviews; the DHO does not explain why he chose to believe one witness over another; and the DHO signed a discipline hearing report, certifying that it accurately reflected the proceedings but now claims it did not accurately reflect the proceedings and should be replaced by a new report. Id., pp. 10-11. Moreover, Petitioner claimed that there is no evidence in the new report supporting the finding that he instigated or organized the food strike in question. Id., pp. 13-14.

The United States Supreme Court has previously explained that "due process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in good time credits." Superintendent v. Hill, 472 U.S. 445, 453 (1985) (emphasis added) (citing Wolff v. McDonnell, 418 U.S. 539 (1974)). However, a prisoner facing a loss of good-time credits is not entitled to the full panoply of procedural safeguards that attend a criminal prosecution. Wolff, 418 U.S. at 556. To satisfy the constitutional requirement of due process, a prison disciplinary action must satisfy only the procedural requirements prescribed in Wolff. There, the Supreme Court held that prisoners facing a loss of good-time credits must be given (1) advance written notice of the charges, (2) an opportunity to present witness testimony and other evidence, and (3) a written explanation of the ultimate resolution of the charges. 418 U.S. at 561; see also Allen v. Reese, 52 Fed. Appx. 7, 8 (8th Cir. 2002) (unpublished opinion) (holding that federal prisoner's right to due process was satisfied, as he was given (i) written

notice of the charges against him, (ii) the right to call witnesses, and (ii) a written report of the DHO's decision), cert. denied, 540 U.S. 849 (2003)).

At the same time, "[i]n the prison context, where swift and sure punishment is often imperative, the Constitution does not require trial-like evidentiary standards." Hrbek v. Nix, 12 F.3d 777, 780 (8th Cir. 1993), cert. denied 513 U.S. 926 (1994). In Wolff, the Supreme Court recognized that the prison environment necessitated granting prison officials' discretion in setting evidentiary standards in disciplinary hearings:

> Ordinarily the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution ... prison official must have the discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence.

418 U.S. at 566.

Due process also requires that there must be "some evidence" supporting the disciplinary determination. Hill, 472 U.S. at 454; see also Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[w]hen inmates are entitled to due process before being disciplined, they must receive: (1) advance written notice of the charges; (2) an opportunity to present evidence in their defense; (3) a written statement by the fact finder of the reasons for the action; and (4) a decision supported by some evidence in the record"). The "some evidence standard" is satisfied if:

> there was some evidence from which the conclusion of the administrative tribunal could be deduced...." United States ex rel. Vajtauer v. Commissioner of Immigration, [273 U.S. 103, 106 (1927) ]. Ascertaining whether this standard is satisfied

> does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-56 (emphasis added); Goff v. Dailey, 991 F.2d 1437, 1442 (8th Cir. 1993) (due process is satisfied if disciplinary committee's decision was based on "some evidence" in record), cert. denied, 510 U.S. 997 (1993).

As a preliminary matter, the fact that Petitioner was provided with the completed DHO report on February 1, 2013, after the present case was initiated, did not deprive him with due process, as due process must be provided before he is deprived of the good-time credits.[5] See Hill, 472 U.S. at 453. Here Petitioner's projected release date is November 5, 2013, via good conduct time release, and any deprivation of good conduct time would have taken place no earlier than October 2013 (subtracting the 27 days from the November 5, 2012 release date). In other words, he was provided with the complete report well before any deprivation of liberty. Moreover, the fact that the BOP provided the completed report after the Petition was filed did not impede Petitioner's ability to challenge this report, as is evidenced by his reply memorandum where Petitioner exhaustively challenged the report.[6]

Second, the Court concludes that Petitioner was afforded the procedural benefits prescribed by Wolff. Petitioner was given written notice of the charges against him; he

---

[5] The Court assumes that the projected release date for Petitioner does not take into account the 27 days of good conduct time.

[6] Notwithstanding the fact that sufficient due process was afforded to Petitioner, the Court finds it inexplicable and inexcusable as to how the BOP and Buser managed to get an incomplete report to Petitioner on August 17, 2012 and respond to his appeal of that report as untimely, yet fail to provide him the complete report until February 1, 2013, after the initiation of this action.

was advised of his rights by a staff member and signed an acknowledgement of those rights; he was given a hearing and an opportunity to have a staff member represent him and present evidence at that hearing; and he was given a written summary of the DHO's findings. See Buser Decl., ¶¶ 4-8, 10-18, Attachs. B, C, E, G.

Petitioner's assertion that he was deprived of due process because the BOP did not follow its own rules and regulations, even if true, does not afford him any relief, as the BOP's failure to follow its own rules does not state a cognizable claim for an infringement of his due process rights. See Jones v. Federal Bureau of Prisons, Civil No. 09-1074 (MJD/RLE), 2010 WL 3118679, *8 (D. Minn. Feb. 08, 2010) (citing Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003)). The procedural protections to which Petitioner is entitled are governed by the due process clause, as prescribed by Wolff, and not prison regulations. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985) ("[O]nce it is determined that the Due Process Clause applies, the question remains what process is due. The answer to that question is not to be found in the [state] statute.") (quotation and citation omitted); Brown v. Rios, 196 Fed. Appx. 681, 682, 2006 WL 2666058, *2 (10th Cir. Sept. 18, 2006) ("The process which is due under the United States Constitution is that measured by the due process clause, not prison regulations.") (citation omitted); Jones v. Jett, Civil No. 10-4201 (MJD/AJB), 2011 WL 5507222, *2 n. 9 (D. Minn. Aug. 12, 2011) ("the BOP's failure to follow its own rules in issuing an Incident Report does not provide grounds for a due process claim.").

Third, the Court finds there is "some evidence" supporting the disciplinary determination that Petitioner engaged in a group demonstration. Here, the evidence before the DHO, and upon which the DHO relied, showed that Petitioner's housing unit

engaged in a food strike as the result of privilege restrictions imposed on the unit. The evidence consisted of observations provided by staff members in their respective memoranda that almost all of the members of the unit did not attend meals starting on September 28, 2011. See Hrbek, 12 F.3d at 781 ("[D]isciplinary actions may be taken- and often they are-based only on a guard's report. Even when there is substantial evidence to the contrary, the committee may find the guard's report to be credible and therefore take disciplinary action.") (citing Hill, 472 U.S. at 456) (constitutionally sufficient evidence consisted of guard's report and oral testimony)).[7] In addition, the evidence shows that Petitioner, even by his own admission, did not attend dinner on September 28, 2011. Further and significantly, the evidence presented to the DHO indicated that Petitioner made the statement that "I heard there was going to be a food strike. I told all the other guys I wear green like them and I was going to go with the flow. I'm glad there was a food strike." Buser Decl., Attach. G, p. 3. Based on this evidence, the Court finds more than some evidence that Petitioner participated in the food strike on September 28, 2011.

In sum, the Court finds that the record in this case provides some evidence to support the DHO's determination that Petitioner committed the prohibited act of Engaging in a Group Demonstration, a Code 212 violation, by participating in the food strike. Consequently, it does not need to address whether the finding that he instigated or organized the food strike is also supported by some evidence, especially in light of the DHO's rationale that the penalty imposed on him was based on the fact that

---

[7] Contrary to Petitioner's assertion the DHO had a duty to explain why he chose to believe the reports of staff members over his statement, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56.

"[i]nmates in a correctional environment who <u>engage in and/or</u> encourage others to engage in a group demonstration usually do so to create a diversion or to disrupt the security of the institution which can cause other inmates to escalate a situation into a serious problem and an unsafe environment." <u>See</u> Buser Decl., Attach. G, p. 4. In any event, this Court notes that the interview taken by staff of inmates who claimed he was instigator, coupled by his statement in support of the food strike and his claim that he had seen this tactic work at his previous place of incarceration in removing restrictions on privileges, provide some evidence that he encouraged the food strike.

Therefore, the DHO's decision in this matter should not be overturned by a writ of habeas corpus. <u>See</u> <u>Goff</u>, 991 F.2d at 1442 (the outcome of prisoner disciplinary proceedings will be upheld by the federal courts if it is supported by some evidence in the record), <u>cert</u>. <u>denied</u>, 510 U.S. 997 (1993).

### III.     RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1] be **DENIED** and this action be **DISMISSED WITH PREJUDICE**.

November 4, 2013

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

## **NOTICE**

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 18, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.